## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID A. JENSEN, as Trustee of the PLATFORM 9¾ TRUST,<br><br>DAWN OATES,<br><br>JUSTIN OATES, and<br><br>H.O., a minor child,<br><br>                Plaintiffs,<br><br>    v.<br><br>TOWN OF BROOKLINE,<br><br>              Defendant. | Case No. _____<br><br>**COMPLAINT** |

For decades, federal law has required municipalities to grant reasonable accommodations from zoning bylaws so that people with disabilities can live in the housing of their choosing. This mandate comes from a trio of statutes: the Fair Housing Amendments Act of 1988 (the "FHAA"), the Americans with Disabilities Act (the "ADA"), and Section 504 of the Rehabilitation Act of 1973. Together, these federal anti-discrimination laws are clear that municipalities cannot force families who need reasonable accommodations to undergo special permit processes, invasive public hearings, or unreasonably lengthy reviews. To the contrary, federal civil rights law mandates that municipalities grant reasonable accommodations from local zoning bylaws and, importantly, forbids municipalities from imposing onerous requirements in seeking such an accommodation.

Despite these federal anti-discrimination laws, the plaintiffs David A. Jensen, as Trustee of the Platform 9¾ Trust (the "Trust"), Dawn Oates, Justin Oates, and

H.O. (together, the "Plaintiffs") have unsuccessfully sought, for years, a reasonable accommodation from zoning bylaws in the Town of Brookline (the "Town" or "Brookline") on behalf of H.O., who has quadriplegia.  The Trust, which holds title to the home in which H.O. and their parents live, has strived to work with the Town to obtain approval for a home renovation necessary for the child since 2020, without success.  Through this case, the Plaintiffs seek relief from these years of discriminatory delay and obstruction, which violated federal anti-discrimination law.

Brookline failed to comply with federal civil rights law because it failed to take any steps to create a legally compliant process through which it can receive and review requests for reasonable accommodations, and more recently, actively opposed Plaintiffs' personal efforts to enact such a bylaw.  When the Trust first sought a reasonable accommodation for H.O., Brookline created an informal *ad hoc* process for the family to follow, which took years and cost the family an enormous sum in architectural, design, legal, and other fees.  After finally obtaining a building permit for the garage in 2022, H.O.'s neighbors appealed, forcing the family through years of additional litigation with no Town support.  In that appeal, a Massachusetts state court preliminarily rejected Brookline's *ad hoc* process.  Both the state court and the parties in that lawsuit urged the Town to adopt a formal amendment to its Zoning Bylaw to codify a reasonable accommodation process, but nearly a year passed and the Town took no such action.

This put the Plaintiffs in an impossible situation.  Due to the Town's inaction, they had no way to obtain a reasonable accommodation.  Because the Town

persistently failed to address this issue, both for the Plaintiffs and for any other Town resident seeking a reasonable accommodation, Plaintiffs were forced to take action and drafted their own proposed bylaw for consideration by Brookline Town Meeting in May 2025.

To Plaintiffs' surprise, Town staff and boards united in staunch opposition to the proposed bylaw, refused to engage in meaningful dialogue with Plaintiffs about the proposal, and instead proposed a competing bylaw that would put anybody seeking a reasonable accommodation through a rigorous and public process in violation of federal law.  Over the Town's objections, Town Meeting ultimately made the right choice, approving the Plaintiffs' proposed bylaw by an overwhelming 75% majority vote.

The Town's yearslong failure to create or properly implement a reasonable accommodation process has left the Plaintiffs, more than five years after first asking for the Town's help, without the reasonable accommodation H.O. needs.  This extended process has been enormously costly to the Plaintiffs and has caused significant distress to H.O. and their family.  Through this action, the Plaintiffs seek relief for violations of the FHAA, ADA, and Section 504, including compensatory damages, punitive damages, attorney fees, and any other relief the Court deems just and proper.  The Plaintiffs also seek a declaration of their rights and the Town's obligations under federal anti-discrimination law, to ensure that H.O. can receive the reasonable accommodation that federal law requires.

## Jurisdiction and Venue

1.      This Court has jurisdiction under 28 U.S.C. § 1331.

2.      Venue is proper in this district under 28 U.S.C. § 1391 because all or a substantial part of the events giving rise to the claims alleged herein took place in the District of Massachusetts.

## Parties

3.      Plaintiff David J. Jensen is trustee of the Platform 9¾ Trust, which is a nominee trust established under a declaration of trust dated August 26, 2019, and recorded in the Norfolk County Registry of Deeds in Book 37107, Page 299.   Mr. Jensen, as trustee, has a principal address of 27 Harvard Street, Brookline, Massachusetts 02445.

4.      The Trust holds title to 16 Hawes Street, Brookline, Massachusetts, where the minor child and their family resides.   H.O.'s two parents are the beneficiaries of the Trust and therefore own 16 Hawes Street.

5.      Plaintiff H.O. is a minor child and Massachusetts resident, domiciled at 16 Hawes Street in Brookline, Massachusetts.  They are quadriplegic and qualify for protections under the FHAA, ADA, and the Rehabilitation Act.

6.      To protect the privacy of H.O., this Complaint uses "they/them" pronouns.  As required by Fed. R. Civ. P. 5.2, the Complaint uses only their initials.

7.      Plaintiff Dawn Oates is a Massachusetts resident, domiciled at 16 Hawes Street, Brookline, Massachusetts.  She is the mother of H.O.

8.      Plaintiff Justin Oates is a Massachusetts resident, domiciled at 16 Hawes Street, Brookline, Massachusetts.  He is the father of H.O.

9.      Defendant Town of Brookline is a Massachusetts municipality, with a principal address of 333 Washington Street, Brookline, Massachusetts.

## Legal Background

10.     Congress has enacted a series of statutes to protect disabled individuals from discrimination.  Three of those statutes are implicated here: the FHAA, the ADA, and the Rehabilitation Act.

11.     Courts apply the same standard for anti-discrimination claims brought under any of these three statutes.  *Giebeler v. M&B Assocs.*, 343 F.3d 1143, 1149 (9th Cir. 2003).  As explained below, each statute requires that municipalities provide reasonable accommodations from zoning bylaws.

12.     Each statute imposes an affirmative duty on municipalities like Brookline to engage in an interactive process with an individual who seeks a reasonable accommodation.

### The Fair Housing Act Amendments of 1988

13.     The FHAA is designed "to protect the right of handicapped persons to live in the residence of their choice in the community" and "to end the unnecessary exclusion of persons with handicaps from the American mainstream." *Giebeler*, 343 F.3d at 1149 (quoting *City of Edmonds v. Wash. State Bldg. Code Council*, 18 F.3d 802, 806 (9th Cir. 1994)).

14.     To accomplish these goals, the FHAA invalidates "any law of a State, a political subdivision, or other such jurisdiction that purports to require or permit any action that would be a discriminatory housing practice."  42 U.S.C. § 3615; *see*

*Oconomowoc Residential Programs, Inc. v. City of Greenfield*, 23 F. Supp. 2d 941, 952 (E.D. Wisc. 1998).

15.    In particular, the FHAA invalidates zoning laws that "require or permit" any discriminatory housing practice. *Casa Marie, Inc. v. Superior Court of Puerto Rico*, 988 F.2d 252, 257 n.1 (1st Cir. 1993); *Oxford House, Inc. v. Town of Babylon*, 819 F. Supp. 1179, 1185 (E.D.N.Y. 1993).

16.    According to the FHAA's legislative history, the FHAA is "intended to prohibit the application of special requirements through land-use regulations, restrictive covenants, and conditional or special use permits that have the effect of limiting the ability of [handicapped] individuals to live in the residence of their choice." *Oconomowoc*, 23 F. Supp. 2d at 954 (quoting H.R. Rep. No. 100-711 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 2173, 2185)).

17.    Municipalities, like Brookline, "must change, waive, or make exceptions in their zoning rules to afford people with disabilities the same access to housing as those who are without disabilities." *Horizon House Developmental Servs., Inc. v. Twp. of Upper Southampton*, 804 F. Supp. 683, 699-700 (E.D. Pa. 1992); *see also Dadian v. Village of Wilmette*, 269 F.3d 831, 838 (7th Cir. 2001).

18.    The FHAA defines discrimination to include refusal to make reasonable modification in rules, policies, practices, or services, when such accommodation may be necessary to afford a person with a disability an equal opportunity to use or enjoy a dwelling. *See* 42 U.S.C. § 3604(f)(3)(B); H.R. Rep. No. 711, 100th Congress, 1st Sess. 18, 24 (1988).

## The Americans with Disabilities Act

19.     Congress enacted the ADA to "remedy widespread discrimination against disabled individuals." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674 (2001); *see* 42 U.S.C. § 12101 *et seq*.

20.     Congress specified that one purpose of the ADA was "to provide a clear and comprehensive national mandate to eliminate discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

21.     The ADA meets that need by forbidding discrimination against disabled individuals in major areas of public life, including housing. This discrimination not only takes the form of "intentional exclusion," but also the "failure to make modifications to existing facilities and practices" to afford equal access to individuals with disabilities. *See* 42 U.S.C. § 12101(a)(5).

22.     To achieve these goals in the housing context, the ADA prohibits a municipality from applying its zoning laws in a discriminatory way towards individuals with disabilities. *See, e.g.*, *Tsombanidis v. City of New Haven*, 129 F. Supp. 2d 136, 151 (D. Conn. 2001).

## Rehabilitation Act of 1973

23.     In enacting the Rehabilitation Act, Congress found that "individuals with disabilities constitute one of the most disadvantaged groups in society" and that "individuals with disabilities continually encounter various forms of discrimination" in "critical areas," including housing. 29 U.S.C. § 701.

24.     Like the FHAA and the ADA, Section 504 of the Rehabilitation Act forbids municipalities from discriminating based on disability. *See* 29 U.S.C. § 794.

25.     Discrimination includes the refusal to modify an existing program to accommodate an individual with disabilities. *Alexander v. Choate*, 469 U.S. 287, 300 (1985).

26.     The Rehabilitation Act requires municipalities to grant reasonable accommodations from zoning bylaws. *See, e.g.*, *Trovato v. City of Manchester, N.H.*, 992 F. Supp. 493, 498-99 (D.N.H. 1997).

## Factual Background

27.     The Plaintiffs need a reasonable accommodation from Brookline's zoning bylaws to renovate the home at 16 Hawes Street, including (but not limited to) building a covered garage, connected to the family home, to ameliorate the effects of H.O.'s disability and provide them with a safe, compliant ingress and egress to the home.

28.     When Plaintiffs moved into their home, Brookline had no formal process to review and grant any such request for a reasonable accommodation, and took no steps to implement a federally compliant one in the more than five years that the Plaintiffs have been seeking this accommodation.

### The Purchase of 16 Hawes Street

29.     The Trust bought 16 Hawes Street in 2019, after which H.O. moved in with their parents and two siblings.

30.     H.O.'s family chose to live in the Longwood neighborhood of Brookline because of the proximity to several institutions where H.O. receives medical care.

31.     Unlike many other homes in the area, 16 Hawes does not have a garage for the parking and storage of vehicles.

32.     H.O. has quadriplegia and requires the use of a motorized, self-operated, 400-pound wheelchair at all times, including while entering and exiting the home.

33.     H.O.'s medical condition carries other serious symptoms and side effects that are not visibly apparent or easily perceptible.  It is not possible for third-parties to know about every aspect of H.O.'s disability without access to their medical records and history.

34.     H.O. requires around-the-clock care, including the presence of nurses at their home at 16 Hawes Street.

35.     H.O.'s medical condition qualifies as a handicap under the FHAA, 42 U.S.C. § 3602(h), and a disability under the Rehabilitation Act and ADA.  29 U.S.C. § 705(9); 42 U.S.C. § 12102(1).

36.     H.O. is an "aggrieved person" under the FHAA because they have been injured by Brookline's discriminatory housing practice.  *See* 42 U.S.C. § 3602(i).

## The Proposed Addition

37.     H.O.'s family has sought to renovate and alter their home to allow H.O. to live in this home as independently as possible for the remainder of their natural life.

38.     One such renovation includes the construction of a multi-purpose, accessible addition.

39.     The purpose of the addition is to provide a covered, accessible ingress and egress to the home for H.O., provide ADA-compliant ramp access within a split-

level first floor plan, store emergency medical equipment, provide an accessible restroom, and house the specialty vehicles that are required to transport H.O.

40.    H.O.'s medical condition requires that they have a covered ingress and egress to the home, because temperature fluctuations can be medically threatening. It ensures privacy and dignity when loading and unloading them and substantial medical equipment into and out of the vehicle.  Exposure to the elements can also damage or degrade their wheelchair and the family's wheelchair-accessible vehicles.

41.    The family must currently park their wheelchair-accessible vehicles outside, which has already damaged them and imposed great cost on the family.  The family has had to replace two vehicles already.  The manufacturer of these vehicles recommends parking them inside due to New England weather conditions, which can cause rust, damage the modifications, and compromise the integrity of the vehicles.

42.    The family must also coordinate parking for their two wheelchair-accessible vehicles during snowstorms, including paying for parking in a nearby lot. This coordination causes significant logistical problems and lost time, in addition to stress and anxiety, all of which non-disabled individuals need not face—especially the many individuals in the neighborhood who have attached, covered, two-bay garages.

43.    The garage at 16 Hawes Street must be large enough to allow for the ramps that H.O. needs to access the wheelchair-accessible vehicles.  The garage must also house equipment and services that H.O. needs when transitioning to and from the home.

44.   The home currently has a metal ramp that provides ingress and egress for H.O., but that ramp is far from adequate.  Not only is it exposed to the elements (which endangers H.O. because of their medical condition), but it is too steep and not wide enough.  The yard also has a metal ramp for connecting a split-level yard, which the addition's grading aims to correct.

45.   For instance, H.O. has slid backwards down the ramp and driven a wheel off the ramp, which inflicts significant emotional distress on the entire family and can cause medical complications for H.O. if they were to suffer an injury.  These issues are worse in the wintertime, when the ramp may be slick or icy, or when it rains.

46.   H.O.'s medical condition has recently changed, causing them to have unexpected life-threatening blood pressure fluctuations when ascending the steep exterior ramp.  H.O., their parents, and their nurses have expressed concerns for the ramp grade and its immediate impact on H.O.'s health.

47.   H.O. does not have safe, independent ingress and egress to their own home and Brookline's failure to comply with federal anti-discrimination law prevented the construction of that safe access through a covered addition.

48.   The proposed renovation will also ameliorate the effects of H.O.'s disability inside the home, which has steps between certain rooms that H.O. cannot maneuver with their wheelchair.

49.   The family currently uses a ramp between these parts of the home, but the ramp is too steep for H.O. to use in one of their wheelchairs.  Other wheelchairs

can access the ramp, but only with caution and a running start. Manual wheelchairs cannot use this steep interior ramp at all.

50. The proposed renovation will allow for interior ramps that are safe and accessible to H.O., so that they can safely and easily access all parts of their home like non-disabled individuals can.

51. The proposed addition requires a reasonable accommodation from Brookline's zoning bylaws, including front and side yard setbacks and the minimum percentage of usable open space for a single-family dwelling. *See* Town of Brookline Zoning Bylaw, Table 5.01 (S-10 Residential Zoning District); Table of Use Regulations, Section 4.07, Use #62; Maximum Floor Area Ratio, Section 5.20; Exceptions to Yard and Setback Regulations, Section 5.43; Alteration and Extension, Section 8.02.2.

### Brookline's *Ad Hoc* Reasonable Accommodation Process

52. In April 2020, just a few months after H.O. and their family moved in, the Trust applied for a building permit to demolish and renovate portions of the home and, relevant here, to construct an accessible entrance and two-bay garage.

53. The Trust applied for permits for other necessities on the property, like a generator necessary for H.O.'s medical care. Rather than simply providing accommodations for those permits, as required by federal law, the Town required the Trust to provide counter-balancing amenities for abutters, like planting trees around the generator. The imposition of expensive counter-balancing amenities like this violated federal anti-discrimination law.

12

54.    In September 2020, Brookline asked the Trust to apply for zoning relief for the project through the special permit process.

55.    The special permit process is a lengthy, costly, and burdensome procedure.   Applicants must submit an initial application to the Building Commissioner and undergo subsequent public hearings before the Planning Board and Zoning Boards of Appeals.  It also allows the Zoning Board of Appeals to impose "counterbalancing amenities" on applicants, and consider additional criteria, both of which would violate federal anti-discrimination law.  Moreover, there is no provision for a special permit for a reasonable accommodation under the Brookline Zoning Bylaw.

56.    Under federal anti-discrimination law, municipalities may not require a person with disabilities to undergo a special permit or variance process to receive a reasonable accommodation.  *See Horizon House Development Servs., Inc. v. Township of Upper Southampton*, 804 F. Supp. 683, 700 (E.D. Pa. 1992); *Stewart B. McKinney Foundation, Inc. v. Town Plan and Zoning Comm'n of the Town of Fairfield*, 790 F. Supp. 1197, 1210, 1222 (D. Conn. 1992).

57.    These processes violate federal anti-discrimination laws because they require individuals with disabilities to undergo costly and public reviews to obtain the housing they need—something individuals without disabilities need not do.

58.    Requiring the Trust to undergo Brookline's special permit process would also violate federal anti-discrimination laws because of how long it would take and because it would expose the family to discriminatory opposition and animus.

59.    A delay in granting a reasonable accommodation is itself actionable under the FHAA.  *See Astralis Condominium Ass'n v. Secretary of U.S. Dep't of Housing and Urban Dev.*, 620 F.3d 62, 68-69 (1st Cir. 2010).

60.    Undergoing Brookline's special permit process would take months and then potential judicial review of the Town's decision could take years.  Federal anti-discrimination law requires a timely reasonable accommodation, as the Trust often communicated to the Town.

61.    The Trust declined to undergo the special permit process and instead requested, in November 2020, a reasonable accommodation from the Town's zoning bylaws pursuant to G.L. c. 40A, § 3, the Rehabilitation Act, the FHAA, and the ADA.

62.    The Town acknowledged that forcing the Trust to go through the special permit process would violate federal antidiscrimination law.

63.    At the time, Brookline did not have any written policy or procedure, formal or informal, to review and grant requests for reasonable accommodation from zoning rules.

64.    Rather than take steps to enact a zoning bylaw or even a formal policy to review and grant requests for reasonable accommodation, the Town created an *ad hoc* process for the Trust to follow.

65.    This *ad hoc* process included elements prohibited under federal law but that the Trust chose to undertake, because the accommodation was needed promptly.

66.    The Town decided to use an *ad hoc* process despite knowing that abutters to 16 Hawes Street would appeal any permit and decision.

14

67.    Brookline's Building Commissioner, with guidance from Town Counsel, agreed that requiring the Trust to go through the special permit process could violate the FHAA.

68.    The Building Commissioner, as the lead zoning enforcement officer for the Town, determined that, because the Trust's project involved the construction of an addition to an already-existing home, he was the proper municipal official to consider the Trust's request and grant a reasonable accommodation if the law required one.

69.    To obtain the information he needed for this determination, the Building Commissioner asked the Trust to appear alongside him at the Commission on Disability and the Planning Board.

70.    The Trust agreed to the former request, but not the latter.

71.    Instead, the Trust and the Town agreed that an independent architect would review the plans.

72.    The Trust paid for the independent architect, which cost the Trust approximately $2,000.

73.    The Town influenced the conclusions of this architect. For instance, the architect originally supported the Trust's proposed roof deck on top of the addition and revised her report after the Town pressured her to respond to abutter complaints that they did not want the roof deck in the setback. The architect's revised report concluded that a smaller roof deck would be unusable for H.O. This report imposed

financial costs on the Plaintiffs through more architectural revisions and a second review after those revisions.

74. The Town made two site visits to the property (one visit by the Building Commissioner and one by the Chair of the Commission on Disability), during which members of the Oates family had to climb up scaffolding and crawl in a window of an active construction site, to support the Trust's requests for a reasonable accommodation.

75. Brookline's Commission on Disability met on December 9, 2020, to discuss the Trust's request for a reasonable accommodation.

76. A week later, the Commission on Disability wrote to the Building Commissioner with its determination that the garage was necessary for the minor child to have access to housing, and that the garage was reasonable and appropriate for the home and neighborhood.

77. The independent architect also reviewed the plans and determined that the garage was well designed for the neighborhood and could not be changed to become more compliant with zoning bylaws without compromising its utility for H.O.

78. The Building Commissioner granted a reasonable accommodation from Brookline's zoning bylaws in a letter dated May 13, 2021.

79. The Trust submitted revised plans to the Town on September 30, 2022.

80. The garage in those plans was in fact too small, because the clearance areas around the proposed parking spots did not meet ADA requirements.  The

Plaintiffs nonetheless submitted those plans to request the minimum accommodation necessary to fit the family's needs and ameliorate the effects of H.O.'s disability.

81.     The Building Commissioner issued a building permit on November 29, 2022, under the terms set forth in his May 13, 2021 letter.

82.     The Town has not forced all applicants for reasonable accommodations through a complicated *ad hoc* process like the one Plaintiffs were forced into.  For instance, in January 2025 the Building Commissioner approved a lift for a disabled individual for safe access to his home immediately, as a reasonable accommodation from Brookline's zoning bylaws.  That approval did not require any special process or approvals beyond the Building Commissioner.  Yet the Trust was forced to follow, and did follow, the Town's *ad hoc* process for H.O. to request safe, independent access to their home.

### The Abutters' Appeals and Further Delay

83.     H.O.'s neighbors appealed the Trust's building permit to Brookline's Zoning Board of Appeals (the "ZBA").

84.     These same neighbors had previously done work to their home contrary to Brookline's zoning, demolition, and preservation bylaws, but the Town took no action against them for this improper work, despite a request for enforcement.

85.     The ZBA convened a hearing to consider the appeal of the building permit on February 2, 2023, and February 23, 2023.

86.     The ZBA's hearing lasted a total of seven hours across those two dates.

87.    The ZBA unanimously voted to uphold the Building Commissioner's issuance of the building permit and filed a written decision on April 20, 2023.

88.    The abutters appealed the ZBA's decision upholding the building permit to the Massachusetts Land Court on May 4, 2023. *See Schoen et al. v. Jensen et al.*, Case No. 23 Misc 000187 DRR (Mass. Land Ct.).

89.    The abutters argued, in part, that the process implemented by the Building Commissioner was improper and the Town lacked the authority to grant the building permit.

90.    The Trust moved to dismiss the abutters' appeal on the basis that federal anti-discrimination law required the Town to provide a reasonable accommodation, including that the Town cannot require individuals with disability to undergo a special permit or variance process.

91.    The Trust requested the Town's support in filing that motion to dismiss, but the Town declined to join in the motion, voice support for the arguments in the motion, or otherwise take any action to defend the *ad hoc* process it had forced the Trust to follow.

92.    The Land Court denied the Trust's motion to dismiss, finding that, contrary to federal law, the Trust might have received a reasonable accommodation through the special permit process. The Land Court agreed that Brookline's bylaw did not have a "specific process tailored for applications by people with disabilities." The Land Court noted it was not aware of "any federal or state requirement for such

a tailored bylaw," but remarked that one would be "laudable" and "may have avoided the current lawsuit."

93.    The Trust appealed the denial of its motion to dismiss to a single justice of the Massachusetts Appeals Court, who also denied relief.  *See* Case No. 2023-J-0744, Dkt. No. 9.  The single justice also opined that the existing special permit process might provide an "adequate process to reasonably accommodate" the minor child.  *Id.*

94.    Neither the Land Court nor the Appeals Court reviewed the specific provisions of Brookline's Zoning By-law regarding special permits.  Following that process would have violated Plaintiffs' rights.

95.    After the Trust's motion to dismiss was denied, the abutters aggressively sought discovery into the specific medical conditions of H.O., and the Land Court refused to issue a protective order to protect H.O. and their family from these invasive requests.

96.    Almost a year into the Land Court proceedings, counsel for the abutters noted in court that the litigation had been ongoing for several months and the Town had not done anything to add a process in its zoning bylaws for reviewing and granting reasonable accommodations.  In fact, at that point the Town had been aware of the need for a reasonable accommodation process for more than three years and had taken no action to address this need.

97.    The Land Court judge also remarked that the Town should have a "process in place" for such requests because any future requests for reasonable

accommodations would likely create similar legal challenges for the individuals requesting the reasonable accommodation.

98.    In fact, the Town has faced similar reasonable accommodation challenges in the past and failed to provide necessary reasonable accommodations because of invidious neighborhood opposition and because the Town acceded to abutters' alleged concerns rather than provide the relief to which disabled individuals were entitled under federal law. Brookline has had a years-long pattern and practice of failing to comply with federal anti-discrimination law.

99.    In response to these comments, counsel for Brookline indicated that the Town would work to implement a process through which the Town could receive, review, and grant requests for reasonable accommodations.

100.    Faced with the prospect of being forced to provide deeply personal medical information about their minor child to their neighbors, and to defend a process created by the Town that the Town itself was unwilling to defend, thereby incurring substantial legal fees, the Trust decided to surrender the building permit and end the litigation.

101.    On July 16, 2024, the Land Court approved an Agreement for Judgment, under which the ZBA's decision was annulled and vacated.

### Brookline Again Succumbs to Abutter Opposition

102.    As the Land Court litigation was proceeding, the Oates family requested an on-street handicapped parking space in anticipation of construction of their

20

accessible addition and to accommodate H.O.'s overnight nurse, who also had physical disabilities and a handicapped parking placard.

103.    The Oates family did not request a specific location, only that the Town locate this parking space closest to the only accessible entrance to their home, indicating that they use the rear door accessed from Beech Road.

104.    Initially, the Town placed the space in front of 10 Beech Road, but the abutter opposed that decision because he did not want to look at an accessible vehicle in front of his house.  The abutter engaged a Select Board member to negotiate with the Trust to agree to move a decades-old no parking zone intended to daylight what the abutter and neighbors had previously complained was a busy and dangerous intersection.

105.    The Trust let the Town decide the location of the spot, only requiring a legally compliant spot and highlighting the many factors impacting ADA compliance at the corner. They asked that the Town do a turn study before making their decision. The Town later moved the parking spot closer to the intersection of Hawes and Beech Streets. When the Trust reminded the Town of the turn study contingency, the Town returned a one-page illustration that indicated possible damage to property and person if a vehicle were to park at the corner.

106.    Because of the proximity of this spot to the intersection, and the lack of adequate sight lines, this new spot poses safety risks to people and property.

107.    For instance, H.O. cannot cross the street there anymore when there is a vehicle parked in this location, because they cannot look around the vehicle to see if traffic is coming.

108.    The Town moved the parking space to this spot even though they knew there were a tree, its root system, and a gas cap protrusion that render the space inaccessible.  The adjacent sidewalk did not comply with accessible grade or surface requirements.

109.    The result is that the Town again succumbed to abutter "concerns" and thereby violated federal anti-discrimination law.  Rather than ensure that disabled individuals receive equal access, they provided a substandard accommodation to appease neighbor opposition.

110.    The family's disabled nurse quit while waiting for the Town to provide an accessible parking space.  This affected H.O.'s medical care, resulted in increased costs to the Plaintiffs, and created emotional distress, stress, and anxiety.

**Brookline's Recent Violations**

111.    Despite representing to the Plaintiffs and the Land Court that it would take action to create a bylaw or policy to address reasonable accommodation requests in early 2024, the Town took no action to create a bylaw or policy for the remainder of that year.

112.    In early 2025, Brookline finally began, through its Commission on Disability and staff, to consider a town "policy" for a reasonable accommodation process.

113.    This proposed policy would not have the same legal effect as a bylaw and would not supersede or invalidate any of Brookline's zoning bylaws.  In other words, it would not create a legally enforceable mechanism for the Trust to request and receive a timely reasonable accommodation.  It mirrored complaints raised by the abutter at the ZBA hearing.

114.    Any individual, family, or entity seeking a reasonable accommodation under the proposed policy, including the Trust, would be vulnerable to the same attacks that were levied on the previous *ad hoc* process.

115.    The proposed policy also suffered from several legal defects, and was not compliant with federal disability law.

116.    Because the Town again failed to affirmatively modify policies, practices, and procedures when necessary to avoid discrimination on the basis of disability, as required under federal law, Plaintiffs decided to take action themselves. Ms. Oates proposed two warrant article for Brookline's 2025 Annual Town Meeting: to codify a reasonable accommodation process under the Zoning Bylaw and to amend the Demolition Bylaws to not impose discretionary demolition delays on approved reasonable accommodations.

117.    This proposal would ensure that Brookline has a reasonable accommodation process that complies with federal law.

118.    After the warrant articles were submitted, Town boards, commissions and committees began reviewing and criticizing the proposal for reasons that violate federal anti-discrimination law.

119.    For instance, several Board members have commented that the Town must balance the needs of the disabled individual against the desires of any abutters. But individuals without disabilities are allowed safe access to their homes without having to balance that necessity against their abutters' concerns.

120.    Town staff and Board members expressed a desire to prioritize notice to abutters and Town officials over the need for a timely reasonable accommodation. Many Town boards and commissions insisted on lengthy review processes that would ensure neighbors could voice oppositions to reasonable accommodations, rather than ensuring that disabled individuals get the timely relief that federal law requires.

121.    Throughout the hearings on the warrant article, members of several Town boards and commissions also questioned whether H.O. truly needed the proposed renovation, whether the family should have just bought a house in another neighborhood, and whether the renovation would be unfair to abutters.  All these discriminatory comments took place in open meetings and have particularly impacted Ms. Oates, who has advocated for H.O. and who has been subjected to reputational damage, emotional distress, and physical symptoms of stress and anxiety.  None of these comments were relevant or appropriate to raise within the context of the proposed warrant article.

122.    Significantly, the only Town committee to unanimously vote to support the proposed warrant article was the Commission on Disability—in other words, the Town entity with the most knowledge of federal disability law and disability rights.

123.    After failing to take any action to create their own bylaw or respond to Ms. Oates's request to support hers, the Town decided to craft a competing bylaw and propose it to Town Meeting as an alternative to the Oates proposal.  That competing bylaw utterly failed to comply with federal anti-discrimination law for numerous reasons, all of which were articulated to the Town multiple times.  It would have required that the Planning Board hold a public meeting, complete with notice to abutters and Town Meeting members, on any reasonable accommodation request. Not only do these requirements violate federal law, but they have also been struck down by the Attorney General's Office on several previous occasions.  The Town ignored that clear guidance, and instead attempted to include creative language in their proposed bylaw to exploit a perceived loophole in these previous decisions.

124.    Ms. Oates requested that the Town grant a reasonable accommodation in the form of a change in procedure: to adopt a bylaw to clear the path for implementation of a reasonable accommodation without the barriers that the *ad hoc* process or policy path would bring.  This request should have led to an interactive process between the Town and Ms. Oates on her request, but the Town failed to comply with those obligations.

125.    At Brookline's 2025 Annual Town Meeting on May 28, 2025, Town boards and staff continued to press their desired amendments to the proposal, mischaracterizing Ms. Oates's proposal in the process and fabricating new "concerns" with that proposal that had not previously been communicated to Plaintiffs.

126.    Over the Town's vocal objections, Town Meeting voted decisively in favor of Ms. Oates's proposed bylaw.

127.    Thus, it is only as of May 29, 2025, more than five years after purchasing their home, that the Plaintiffs have a viable avenue to receive a reasonable accommodation from Brookline.  And the only reason this avenue is now available to Plaintiffs is the actions of Ms. Oates herself, in the face of strong Town opposition. These actions created immense stress for Ms. Oates and took countless hours of time to prepare and attend the numerous public meetings about her warrant articles in the months leading up to Town Meeting.

128.    Because Brookline refused to create a legally enforceable process by which the Town can receive and review requests for reasonable accommodation from zoning bylaws, thereby denying Plaintiffs the reasonable accommodation they have needed for years, it has violated Plaintiffs' rights.

**Effects of Brookline's Violations on the Plaintiffs and Their Family**

129.    Despite many years of applications, hearings, and litigation, invasive discussions, unwarranted abutter opposition, and recent Town opposition, H.O. still does not have a safe ingress and egress to their home.

130.    When first approached by Plaintiffs in 2020, Brookline took no steps to draft or implement a bylaw that would provide for a reasonable accommodation process that would satisfy federal anti-discrimination law.

131.    The Trust worked with Brookline for several years through the Town's *ad hoc* process.  The Town outlined the process for the Trust to follow and the Trust did so.

132.    Following the Town's process did not result in a reasonable accommodation, however, but rather led to lengthy, expensive, and emotionally taxing appeals and litigation in Land Court with the family's neighbors.

133.    During the Land Court litigation, the Town failed to defend its process and left it to the Trust to brief and argue why the Town's *ad hoc* process was legally correct.

134.    In particular, the Town treated the request for a reasonable accommodation as a standard zoning issue under G.L. c. 40A, rather than assessing the request under federal anti-discrimination law.

135.    These failures by the Town led to substantial expense for the Trust and significant stress, anxiety, and emotional distress for H.O. and their family.  It ultimately led the Trust to abandon the building permit under duress, after learning that the Town was unwilling to defend it in court, that legal fees moving forward would continue to mount, and, most importantly, that invasive discovery could expose H.O.'s private medical history.

136.    After the Land Court litigation concluded, the Town still failed to act to ensure that it had a process to receive, review, and grant future reasonable accommodation requests.

137.    When Ms. Oates took action herself to create a legal process for the Town, Town Boards and staff vigorously opposed her efforts, compounding the stress, anxiety, and emotional distress felt by H.O. and their family.  Time and time again, during public meetings on the proposed bylaw amendment, individuals from the Town opined on Plaintiffs' personal situation and refused to listen when Plaintiffs explained what federal law requires.

138.    The Town's failure to provide a reasonable accommodation, its failure to provide a legally binding process to request, or facilitate the implementation of, such a reasonable accommodation, and its active attempts to prevent Plaintiffs from creating such a process, have inflicted significant damage on the Plaintiffs.

139.    The family at 16 Hawes Street has expended enormous financial, occupational, and emotional resources to request and defend the reasonable accommodation, including the fee paid to the peer review architect; attorney fees for the permitting, architect fees for design iterations based on neighbor, Town, and peer review feedback; attorney fees to defend the Town's process in the Land Court, and attorney fees after the Land Court litigation to create and implement an enforceable reasonable accommodation process.

140.    The Town's delay in providing a reasonable accommodation has caused other economic damages as well, including architectural plans and revisions, additional construction costs, ramps, damages to the home from those ramps, damage to medical equipment, damage to wheelchair-accessible vehicles, loss of enjoyment of

the home and neighborhood, costs for counterbalancing amenities they were not required to make, and more.

141.    The Town's failure to comply with federal law has resulted in emotional and psychological damage for the family as well, including stress and anxiety from the effects of the elements on H.O.'s condition, trauma from the unsafe ingress and egress for the home, loss of autonomy, and more.

142.    Because of the process the Town imposed on the Plaintiffs, many people in the neighborhood have turned against the family, which makes doing things like walking a dog, riding a bike, or just loading the kids into a vehicle outside stressful and anxiety-producing.

143.    The members of this family have been ostracized as a result of neighborhood animus, which germinated from the Town's *ad hoc* process.   H.O. suffered loss of a neighborhood friendship without explanation.  This extends to the minor children who live in the home, who have suffered mental health effects from the years of public scrutiny on their family and from the discriminatory opposition of their neighbors.  Rumors of this ordeal have spread to other neighborhoods as well.

144.    The family is subject to constant surveillance from abutters who oppose any reasonable accommodation or renovation to the family home, making everyday life in their home stressful and distressful.  At one point, abutters mounted a video camera pointed into the Plaintiffs' driveway that captured video of the Plaintiffs' minor children.

145.    These emotional impacts have caused medical conditions in the family, including medical diagnoses for stress and heart-related symptoms.

146.    These costs, collectively, have grown (and continue to grow) into the hundreds of thousands of dollars.

147.    The family has also experienced emotional distress, stress, and anxiety, both from the litigation brought by their neighbors, but also from the uncertainty of knowing whether the minor child would ever have a safe ingress and egress to their home. Every time that H.O. falls off or slides down the ramp, suffers any effects from the unsafe access point, or is anticipated to, the family suffers renewed emotional distress.

148.    The Town knew for years that it must implement a zoning bylaw so that all residents of Brookline can request and receive a reasonable accommodation in a timely way, without fear that the Town's process will be challenged in state court. The Town did nothing to address these failures, despite knowing that the status quo fails to meet federal anti-discrimination law, which shows reckless indifference both to the suffering of this family and to its violation of federal law. Instead, the Town actively opposed Plaintiffs' attempts to address these failures for the Town.

## Count I

### Violation of the FHAA

149.    The Plaintiffs reallege and incorporate by reference the allegations contained in all preceding paragraphs.

150.    H.O. has a handicap as defined under 42 U.S.C. § 3602(h).

151.    H.O. is an aggrieved person as defined under 42 U.S.C. § 3602(i).

152.    Brookline injured H.O. in violation of the FHAA, 42 U.S.C. § 3601 *et seq.* by failing to provide a reasonable accommodation from Brookline's zoning bylaws.  42 U.S.C. § 3604.

153.    The Plaintiffs have suffered damages as a result of Brookline's discriminatory conduct, including economic damages, attorney fees, emotional distress, lost use, increased construction costs, and costs associated with the request for a reasonable accommodation.

154.    Brookline discriminated against H.O. with malice and/or reckless indifference that its actions might violate the FHAA.

155.    Brookline knew that its actions violated the FHAA, yet it continued to enforce its zoning bylaws against the Plaintiffs.

156.    The Plaintiffs are entitled to equitable relief, injunctive relief, and compensatory damages in an amount to be determined at trial, as well as attorney fees and litigation costs, pursuant to 42 U.S.C. § 3613.

157.    The Plaintiffs are entitled to punitive damages, pursuant to 42 U.S.C. § 3613.

## Count II

## Violation of the ADA

158.    The Plaintiffs reallege and incorporate by reference the allegations contained in all preceding paragraphs.

159.    H.O. has a disability as defined under 42 U.S.C. § 12102.

160.    H.O. is a qualified individual with a disability as defined under 42 U.S.C. § 12131.

161.    Brookline injured H.O. in violation of the ADA, 42 U.S.C. § 12101 et seq. by failing to provide a reasonable accommodation from Brookline's zoning bylaws.  42 U.S.C. § 12132.

162.    The Plaintiffs have suffered damages as a result of Brookline's discriminatory conduct, including economic damages, attorney fees, emotional distress, lost use, increased construction costs, and costs associated with the request for a reasonable accommodation.

163.    The Plaintiffs are entitled to injunctive relief, 42 U.S.C. § 12133, as well as attorney fees and litigation costs, pursuant to 42 U.S.C. § 12205.

**Count III**

**Violation of the Rehabilitation Act**

164.    The Plaintiffs reallege and incorporate by reference the allegations contained in all preceding paragraphs.

165.    Brookline receives funding from the federal government and therefore must comply with the Rehabilitation Act.  29 U.S.C. § 794.

166.    H.O. has a disability as defined in 29 U.S.C. § 705(9).

167.    Brookline injured H.O. in violation of the Rehabilitation Act, 29 U.S.C. § 701 et seq., by failing to provide a reasonable accommodation from Brookline's zoning bylaws.  29 U.S.C. § 794.

168.    The Plaintiffs have suffered damages as a result of Brookline's discriminatory conduct, including economic damages, attorney fees, emotional

distress, lost use, increased construction costs, and costs associated with the request for a reasonable accommodation.

169.    The Plaintiffs are entitled to equitable relief, injunctive relief, and compensatory damages in an amount to be determined at trial, as well as attorney fees and litigation costs, pursuant to 29 U.S.C. § 794a.

## **COUNT IV**

### **Declaratory Judgment**

170.    The Plaintiffs reallege and incorporate by reference the allegations contained in all preceding paragraphs.

171.    H.O. has quadriplegia, which qualifies as a handicap and disability under federal anti-discrimination law.  *See* 42 U.S.C. § 3602(h) (FHAA); 42 U.S.C. § 12102 (ADA); 29 U.S.C. § 794 (Rehabilitation Act).

172.    H.O. is an aggrieved person under federal anti-discrimination law.  *See* 42 U.S.C. § 3602(i) (FHAA); 42 U.S.C. § 12131 (ADA).

173.    The Trust has sought a reasonable accommodation from Brookline's zoning bylaws on behalf of H.O.

174.    This reasonable accommodation would ameliorate the effects of H.O.'s disability and is necessary to afford H.O. an equal opportunity to use and enjoy their home.

175.    Brookline could provide this reasonable accommodation without suffering any financial or administrative burden, any undue hardship, or any

fundamental alteration of its zoning scheme. The Town has already agreed that the reasonable accommodation meets these criteria.

176. An actual controversy exists between the parties because Brookline has acknowledged it must implement a formal process to receive and review requests for reasonable accommodation, but has taken no steps to do so, and actively opposed Plaintiffs' efforts to do so.

177. An actual controversy exists between the parties because H.O. has been and will continue to be injured by Brookline's discriminatory housing practices.

178. The Trust seeks a declaration from this Court that Brookline must have a legally adequate process through which it receives requests for a reasonable accommodation. *See* 28 U.S.C. § 2201.

179. The Trust seeks a declaration from this Court that Brookline's process must adhere to federal anti-discrimination law. *See* 28 U.S.C. § 2201.

180. The Trust seeks a declaration from this Court that Brookline must provide a permit to the Trust for the family to build the attached, covered, two-bay garage that H.O. needs for safe ingress and egress to the home.

181. Plaintiffs are entitled to equitable, declaratory, and injunctive relief, as well as attorney fees and litigation costs. *See* 42 U.S.C. § 3613 (FHAA); 42 U.S.C. § 12133; 42 U.S.C. § 12205 (ADA); 29 U.S.C. § 794a (Rehabilitation Act).

## REQUEST FOR RELIEF

**WHEREFORE**, the Plaintiffs respectfully request that this Court:

1) Declare that Brookline has violated the FHAA, ADA, and Rehabilitation Act;

2) Declare that Brookline may not force the Plaintiffs to use either the special permit or variance process to request and receive a reasonable accommodation from zoning bylaws;

3) Declare that Brookline must have a legally adequate process for considering reasonable accommodations that complies with federal anti-discrimination law;

4) Order Brookline to provide the Plaintiffs with a reasonable accommodation from the Town's zoning bylaws;

5) Award the Plaintiffs compensatory damages, punitive damages, and the costs of this action, including reasonable attorney fees; and

6) Grant any other relief this Court finds just and proper.

## <u>JURY DEMAND</u>

The Plaintiffs demand a trial by jury on all issues triable by jury.


June 3, 2025                                    Respectfully submitted,

                                               */s/ Christina S. Marshall*
                                               Christina S. Marshall, BBO #688348
                                               cmarshall@andersonkreiger.com
                                               Sean M. Grammel, BBO #688388
                                               sgrammel@andersonkreiger.com
                                               ANDERSON & KREIGER LLP
                                               50 Milk, 21st Floor
                                               Boston, MA 02109
                                               Telephone: 617-621-6523
                                               Fax: 617-621-6623